Our next case this morning is Baysal v. Midvale Indemnity and American Family. Ms. Baxter, come. Good morning, may it please the court, my name is Kate Baxter, I'm here on behalf of Baysal v. Midvale Indemnity and American Family, and I'm not sure Persinger and Ewing are analogous here. Intrusion upon seclusion is an intentional tort, and what we have here is, at most, negligence in failing to protect the information. Those claims had to do with, in Persinger, it was a Fair Credit Reporting Act claim, and an intentional sharing of or accessing of data. This is intentional.  It's not a data breach in the sense that it would be, I mean, we believe they were negligent as well, but they gave away the information on purpose. I'm sorry. They permitted the hackers? No. Intentionally, they gave the information to the hackers? Yeah, so the way that American Family and Midvale configured their online platform was that any person who gave a name and a birth date would be provided automatically a driver's license number. There was no hack into American Family's systems. They gave away the information on purpose. Well, they didn't post that information on their website in the sense of intentionally disclosing it to the public. No, they just didn't check whether anybody who asked for it was the— That's negligence. That's not an intentional disclosure. I think under the DPPA, it is. Like our interpretation, and we've had a couple of district courts who agree, so yes. Thank you. Yeah, thank you. Mr. Van Ort. Good morning, Your Honors. May it please the Court. In TransUnion, the Supreme Court clarified the rules for standing to sue, and it held among other things that no plaintiff can be awarded damages without having standing, and also that a risk of future harm standing alone is not enough to support standing to sue for damages. These rules are dispositive of Ms. Italiano's claim for damages because she doesn't allege that anyone even tried to use her driver's license number. She alleges only a risk of possible future harm, and under TransUnion, that's not enough. Under—for Mr. Basall and Mr. Maxim, which Judge Easterbrook was addressing, they allege that someone attempted to use their identities to file for unemployment benefits, but they never allege that anyone tried to use their driver's license numbers. They therefore fail for lack of traceability, because—and this is not a matter of proximate causation being imported into standing—it's but-for causation. There has to be some link, and no link is alleged here. Judge Easterbrook, you asked whether a driver's license is required to apply. The answer is no. We cite the website at pages 5 and 6 of our brief, footnote 1, along with the authority allowing this Court to take judicial notice. Counsel this morning referred to things that may be applied on the back end to check. Those aren't alleged in the complaint and weren't referenced in the brief, so I'm not familiar with them and can't address them. But it is not required to apply in the first place. And as we pointed out in our brief, not only do plaintiffs fail to allege that a driver's license was used, which would be the only way that it's traceable, they don't even allege that the note they got from New York said that the attempt was successful or New York was in the first place. Judge Sykes, I see you may want to ask something, so I invite it. I think, as I—the best interpretation of the standing theory here, the unemployment compensation past harm—let's set aside for the moment the risk of future harm. That's analyzed separately and, as you said, can't support a damages claim, but we do have a claim for declaratory and injunctive relief in this case, so we can talk about that in a minute. But regarding the unemployment compensation applications that are a past event and the link to the driver's license data breach that occurred here or that is alleged here, and that we know occurred because your clients gave notice of it, I think the best argument is that the driver's license was one component of identity that allowed the hackers to put together a more complete package of identifying—personal identifying information, which then was used to take out the unemployment compensation applications or to apply for unemployment compensation in New York. That requires a number of inferential leaps to get there, and maybe that's not enough. That's your argument. It's not enough, and that's what the district court said, but I think that's the argument, that it wasn't the driver's license that was the linchpin, the driver's license number, but that permitted the hackers to put together a more complete package of identifying information that then led to the unemployment applications, the fraudulent unemployment applications. I agree, Your Honor, that the complaint talks generally about how that is done. It does not allege that it actually was done for these plaintiffs, and it's therefore entirely speculative. In addition, if other information was only used and not the driver's license, there isn't any link anymore, unless they could allege that the driver's license was the link that got them the other information, and then the information that they newly acquired is what they used, and that's not what they allege at all. They allege they already had it. So I think here it's the traceability. This has to be plausible at this stage. It doesn't have to be conclusive, but it has to be plausible and not speculative. I'd like to address two things on the risk of future harm and injunctive. Number one, TransUnion gave us a new data point on what is imminent for future harm or what is substantial, and it changed what this court did. This court had said before, reasonably objective likelihood. Supreme Court made it clear, nope, that's not enough for future, and so you can't tag mitigation or prevention on unless it's sufficiently imminent. And in TransUnion, more than 20% of that class had actually had the faulty information, falsely flagging them as terrorists, leaked. And the Supreme Court said that even when 22% of the class members had had it happen, that wasn't enough to make it imminent for the other 80%. Here we have nothing close to an allegation that 20% of these have been used. So under TransUnion's test for future harm that could support mitigation that would create a present harm, it isn't sufficiently likely. As for injunctive relief, Your Honor, let's distinguish between two things that could be enjoined. One would be enjoining the bad guys from using the harm or using the data. That injunction can't happen because they aren't in court. The only injunction that could happen here is an injunction against American Family to improve their systems to prevent a future data breach. The problem with that is that the very material's plaintiff's site showed that there is no imminent risk of another data breach on the auto insurance here. In the report to New Hampshire, which plaintiff's site, and therefore you can take notice of, American Family reported that it took the online sites down. And it also implied server-side masking. And so there isn't any injunctive relief there. Injunctive is separate from damages. That wouldn't save the damages claim in any event. But there isn't standing for the only injunction that could be entered here. I want to finally address the analogy, the argument that the Driver's Protection Act itself elevated something to an injury that wasn't an injury before but was close enough that it fell within Congress's power to do it. And here, the real problem, Your Honor, is that the closest thing here is like an appropriation or name of likeness. That's exactly what identity theft is. You're taking someone's name and your likeness and you're acting like them. That historically is recognized as a harm. Problem is, that doesn't give standing to anyone for whom it hasn't happened yet, right? Plaintiffs are trying to go beyond that. They're trying to go to the point where saying just the theft of the number, that alone is enough to give you standing to sue for damages. And the problem on that is that it doesn't, that argument does not have a close relationship to a traditional harm. The closest one is intrusion upon seclusion. But that requires a couple of things that are missing here. The closest case, Your Honor, I think after TransUnion is this court's case dealing with information. And there, this court held that that was close enough to intrusion upon seclusion. The difference is, of course, a driver's license number is something you have. It's not part of who you are. You know, fingerprints and biometric information, my iris is this, is part of who I am. And that really does speak to the kind of things that fell within privacy. Both of those acts, though, do involve the congressional judgment that common law remedies are not sufficient. And that there are, in fact, in our present society, where we have computerized, computer banks full of information on people, there are other kinds of injury that need to be protected. I mean, your case is, you know, this is a substantive right created by Congress because of a perceived new damage in our society. You really haven't at least convinced me that, for instance, Congress was, the Supreme Court says they were specifically worried about increasing the possibility of stalking in our society. Your Honor, the test that TransUnion set out is not that the new action has to be identical to the common law, but it said there has to be a close relationship, not an attenuated relationship or a stressed, you know, stretched relationship, but a close relationship. In here, in this situation, we're taking just a number and then holding it. That does not have a close enough relationship to anything that was traditionally recognized as a harm. Because it's not personally identifying. It's not like your fingerprints or, for that matter, even your photograph or maybe your weight on this. It's just a number. It doesn't mean anything. So you'll admit that the position you're taking undercuts Congress's intent. Your view is that's perfectly acceptable because of Article III. Not perfectly acceptable, but that Your Honors would have to do it because Article III requires some limits. And when the Supreme Court applied this analysis in TransUnion itself, the elements, the analog there was defamation, which required publication and reputational harm, and it applied both of those elements. So what I think, Your Honor, is that Congress can move sliders on elements, but it can't eliminate elements because once you've done that, it's not have a close relationship. It sounds to me like you're setting up Article III as exercising a certain morteming control over Congress's ability to govern in a modern society. I don't think it has to do with modern society, Your Honor. I think it always exercised that control and it continues to exercise that control. Of course, the Supreme Court said you should give some deference to Congress, and I'm not suggesting otherwise. Have we seen it recently? But there are limits. Have we seen it? Can you point to any case after TransUnion where the courts, the lower courts, have shown deference to Congress having identified a particular harm in society that it wanted to? Yes. At the risk of arguing against myself, Your Honor, this court did. This court did it both in Persinger, which dealt with the Fair Credit Reporting Act, and there it was a propensity to pay score. So it was analogous to something that would be embarrassing, and it found that was a close enough analog to intrusion on seclusion. And the Cothran case that Your Honor was on dealt with BIPA, and it found that was close enough. And so what I think the evolution of this court's cases have shown is that early on in 2007, it was just sort of a wide-open, generalized inquiry. And as more and more cases have come, it has become more and more tailored, and it became more tailored still after TransUnion, and that's where we are. We say this falls on the wrong side of the tailored line. And how—we have a negligence claim in this case. How does TransUnion and Article III map on to common-law claims? We don't need to find a common-law analog because it's a common-law claim. No. I think there, Your Honor, because there isn't any deference to Congress, you're just straight on back the straight-up Article III injury analog, and that's where you have the fact where the criminal's just having this number isn't to harm. You know, plaintiffs allege lots of people have our driver's license. Our employers do. Our doctors do. Insurance companies do. It's permissible for insurance companies to have it. None of that harms anybody. The harm comes when it's actually attempted to use to impersonate you and then get something with negative repercussions on you. That's the missing link in this case. What's not been alleged, and that's why they fall short of standing to sue for damages. Thank you. Thank you, Your Honors. All right. Ms. Baxter-Kauf, I can't remember if you had any time left. You did not. We kept you at the podium with some questions. If you have anything to say in rebuttal, you can have a little extra time. If you need a minute, although it looked like you were ready to go. Thank you, Your Honor. I agree with Mr. Vandort that there is—that once you're talking about the negligence claim that that is kind of in the traditional Article III jurisprudence, I do think that this court's line of cases that started with Piscata and goes all the way through, those lines are still controlling. And I think that I respectfully disagree that a driver's license number is just a number that everyone has and it can be used. We allege in the complaint it's an immutable number, that it's being used largely in place of Social Security numbers by state entities in order to identify people, and that it is used as part of a synthetic identity both for identifying someone and also verifying that that information is correct, right? Once you have—if you have someone's name and other information, a driver's license number provides verification that it's correct, and that that, taken together, combined with the attempted fraud and the unemployment benefits applications is sufficient to meet that requirement under Article III standing. Other than that, I'm happy to answer any questions you have. All right. Thank you very much. Our thanks to all counsel. The case is taken under advisement.